UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

In re:


JADECO CONSTRUCTION CORP.,                          Chapter 7

                                                    Case No. 16-71508-reg



                              Debtor.

------------------------------------------------------------------x
ROBERT L. PRYOR as TRUSTEE OF THE
ESTATE OF JADECO CONSTRUCTION CORP.,

                              Plaintiff,

                                                    Adv. Pro. No. 18-08013-reg

            -against-


TOWN OF SMITHTOWN,

                              Defendant.

------------------------------------------------------------------x


**MEMORANDUM DECISION**

***Introduction***

          This matter is before the Court   pursuant to a motion ("Motion") by the Town of

Smithtown (the "Town" or the "Defendant") for summary judgment to dismiss the complaint

filed by Robert Pryor, the Chapter 7 trustee ("Trustee" or "Plaintiff") in which the Trustee seeks

to recover the value of labor and materials provided by the Debtor to the Town pre-petition as a

constructive fraudulent conveyance pursuant to 11 U.S.C. § 544.  The Town asserts that the

Trustee is barred from recovering on any judgment entered against it by this Court because a State Court has previously found that the underlying contract for which the Town received services expired, and applicable non-bankruptcy law prohibits the Town for paying for services rendered absent an enforceable contract. According to the Town, the important state interest of protecting taxpayers from extravagance and collusion is superior to any right conferred by Congress to the Trustee to recover transfers under § 544 of the Bankruptcy Code and the New York constructive fraudulent conveyance statutes.  The Town also asserts that the Trustee's claims are barred by the *Rooker-Feldman* doctrine, *res judicata* and/or collateral estoppel.

The Town is correct that the contract with the Debtor expired and cannot be enforced. However, the enforceability of this contract is not dispositive of the issues raised in this adversary proceeding.  The Trustee seeks to use his strong-arm powers to recover the value of the materials and labor provided by the Debtor as a constructive fraudulent conveyance. This in fact is the very essence of the fraudulent conveyance statutes as adopted by both states and the Bankruptcy Code. When a debtor has transferred assets pre-petition for little or no consideration, the trustee is charged with recovering the specific assets or the value of those assets for the benefit of creditors.  In order to succeed in this adversary proceeding, the State Court decision need not be disturbed or overturned. To the extent the Town asserts that the State's interest in protecting its taxpayers is greater than the Trustee's right to recover fraudulent conveyances for the benefit of the creditors in this bankruptcy case, the Court disagrees.  The State's interest is admittedly strong, but that interest cannot overcome Congress's decision to vest a bankruptcy trustee or a debtor in possession with the power to avoid fraudulent conveyances on behalf of a debtor's estate.  These powers reflect a federal policy of ensuring that a debtor's creditors receive reasonably equivalent value for transfers made by a debtor pre-petition.   In this case, the Trustee

seeks to recover the value of what was transferred to the Town, not the profit the Debtor could have obtained under a contract theory. Therefore, to the extent there is a conflict between the Bankruptcy avoidance statutes and State law, the Supremacy Clause mandates that the right to recover under a fraudulent conveyance theory remain unfettered by the State and local laws that allegedly stand in the Trustee's way.

### *Procedural History*

On April 6, 2016, the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code.  On January 31, 2017, the Debtor filed a motion to convert the case to Chapter 7, which was granted, and on March 24, 2017, an order converting the Debtor's case to Chapter 7 was entered.   On January 22, 2018, the Trustee commenced this adversary proceeding.  On February 21, 2018, the Town filed a motion to dismiss the adversary proceeding, which was opposed by the Trustee.  On May 3, 2018, an order was entered granting the motion to dismiss only as to the First, Sixth, Seventh, Eighth, Ninth, Tenth and Eleventh causes of action.  On October 10, 2018, the Town filed the Motion, and on November 21, 2018, the Trustee filed a Memorandum of Law in Opposition to the Motion.  On January 11, 2019, the Town filed a Reply.  A hearing was held on January 16, 2019, and on January 31, 2019, the Town and the Trustee filed supplemental memoranda of law. The matter was marked submitted thereafter.

### *Facts*

The Debtor was in the business of providing asphalt and concrete paving of roadways, curbs and sidewalks to local municipalities. Jacinto DeAlmeida was the owner, president and sole officer of the Debtor. The Town is a municipal corporation existing under the laws of the State of New York. In June 2008, the Debtor successfully submitted a proposal in connection with Bid No. 08-050 ("Bid") to perform certain work for the Town including the removal and

replacement of curbs and sidewalks. (Defendant's Ex. C). The Bid was signed by Jacinto

DeAlmeida on behalf of the Debtor. The contract ("Contract") awarded pursuant to the Bid

authorized the Debtor to perform work from June 15, 2008 through June 17, 2009.  The Contract

provided for an extension by mutual consent for up to two years.  The Debtor performed certain

work under the Contract and received payment. In a letter dated April 30, 2009, the Debtor and

the Town's purchasing director, Joseph Kostecki, agreed to extend the term of the Contract

through June 17, 2010. (Defendant's Ex. D).  In a letter dated May 19, 2010, the Debtor and

Kostecki agreed to another extension of the Contract terms under the Bid through June 30, 2011.

(Defendant's Ex. E). This extension went beyond the two-year extension provided under the

Contract by thirteen days.  Prior to June 17, 2011, the Town issued a request for a proposal on

Bid 11-404 ("Second Bid"), a successor contract for municipal work similar to the work under

the Bid. By letter dated June 23, 2011, the Debtor was notified that it was the low bidder on the

Second Bid, and was instructed to return certain affidavits regarding a required apprentice

program.  (Defendant's Ex. F).  On June 29, 2011, the Town sent the Debtor a "blanket"

purchase order for sidewalk and curb replacement and repair.  (Defendant's Ex. G). By letter

dated June 30, 2011, Glenn Jorgensen, the Town's Highway Superintendent, issued the Debtor a

work order to perform curb, apron and sidewalk repairs and installation on three roadways.

(Defendant's Ex. H).  No extension of the Contract beyond June 17, 2011 was competitively bid

for, approved or authorized by the Town Board or the Town Superintendent.  By letter dated July

27, 2011, the Debtor was reminded of its requirements to file affidavits related to the required

apprentice program related to the Second Bid.  (Defendant's Ex. I).  The Debtor was not awarded

the Second Bid, and it was ultimately awarded to another company in August, 2011.  The Debtor

continued to perform work for the Town between June 17, 2011 and October 2011.  Any work

performed by the Debtor between June 17, 2011 and October 2011 was not approved by the Town Board or the Town Supervisor.

On May 31, 2012, the Debtor commenced an action in New York State Supreme Court (the "State Court Action") seeking entry of a monetary judgment arising from the Town's alleged breach of contract.  The Debtor sought recovery of $441,667.26, representing the amount the Debtor asserted it was owed under the Contract, plus consequential damages of $336,125.79, representing the amount the Debtor alleged to have borrowed to cover the operating costs incurred as a consequence of the Town's refusal to pay for the work performed.  On April 6, 2016, the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code.  On May 11, 2016, the Debtor filed a Notice of Removal of the State Court Action to the Bankruptcy Court.  The removed action ("Removed Action") was given adversary proceeding no. 16-8062.  On June 10, 2016, the Town filed a motion to Abstain and for Remand, which was opposed by the Debtor.  On August 2, 2016, the Court entered Supplemental Facts and Conclusions of Law concluding that mandatory abstention from hearing the Removed Action was appropriate ("Abstention Decision").  On January 3, 2017, the Removed Action was closed.

Thereafter, the State Court Action continued in New York State Supreme Court. The Town made a motion for summary judgment seeking dismissal of the complaint, which was granted pursuant to a written decision by Justice Molia dated September 29, 2017 ("Contract Decision") (Defendant's Ex. N).  In the Contract Decision, Justice Molia found that although the Debtor and the Town entered into a valid contract for work performed from June 15, 2008 through June 17, 2011, inclusive of appropriate extensions, the Contract was never further extended through any formal resolution passed by the Town Board and executed by the Town Supervisor, as required under Town Law § 64.  As Justice Molia pointed out, the laws of New

York State require competitive bidding in the awarding of public contracts pursuant to General Municipal Law § 103[1] (Contract Decision at p. 3).  Because the alleged extension of the Contract beyond June 17, 2011 did not comply with Town Law § 64, the Contract expired on June 17, 2011.  (Contract Decision at p. 3).   Justice Molia also ruled that the alleged extension of the Contract could not be ratified because the Town Board had no authority to excuse compliance with Town Law § 64. Justice Molia further held that although there was a narrow exception to Town Law § 64  if a party entered into the contract in good faith, the contract did not violate public policy and circumstances indicated that the municipality would be unjustly enriched, this exception was found to be inapplicable.  According to Justice Molia, the policy of safeguarding the taxpayers' interest against extravagance and collusion on the part of public officials would be contravened if the court determined that the alleged extension of the Contract was enforceable.

On January 22, 2018, the Trustee commenced this adversary proceeding seeking, *inter alia*, to recover the value of the labor and materials provided to the Town in the amount of $441,667.26, which corresponds with the amount alleged to be due and owing under the Contract.   After ruling on the Town's motion to dismiss the adversary proceeding and granting it in part, the only claims remaining are Counts 2, 3, 4, 5 and 7 ("Remaining Claims"), which invoke relief under the constructive fraudulent conveyance statutes of the New York Debtor and Creditor Law. ("DCL").[1] These statutes are applicable under the Trustee's strong-arm provisions set forth in 11 U.S.C. § 544. While § 544 confers the Trustee with standing to bring these actions, applicable state law provides the basis for the causes of action.

---

[1] The second cause of action seeks relief under § 273 of the DCL, the third cause of action seeks relief under § 278 of the DCL, the fourth cause of action seeks relief under § 275 of the DCL, and the seventh cause of action seeks relief under § 550 of the Bankruptcy Code.

By the Motion, the Town seeks dismissal of the Remaining Claims based on the Town's argument that the Trustee's powers under § 544 cannot be used to recover a transfer made pursuant to a contract which is unenforceable.  According to the Town, since the Contract under which the Trustee seeks payment expired, the Town cannot pay any judgment based on work performed after expiration of the Contract.  The Town acknowledges that no consideration was paid for the materials and labor provided by the Debtor after expiration of the Contract, but argues that any ability to recover the value of the materials and labor provided by the Debtor to the Town is foreclosed by the findings in the Contract Decision.   The Town also claims that the important state interest in protecting the public from favoritism, corruption and extravagance trumps any rights the Trustee has to recover from the Town under the constructive fraudulent conveyance claims. The Trustee opposes the Motion on several grounds. According to the Trustee, the Contract Decision is not an impediment to the Remaining Claims because the Trustee is not seeking to enforce the Contract.  Rather, the Trustee seeks to use its powers under § 544 to recover transfers for the benefit of the creditors of the Debtor, and the Town is not immune from such suits under any theory, including the *Rooker-Feldman* doctrine, *res judicata* or collateral estoppel.

### *Discussion*

#### *Summary Judgment Standards*

In order to grant summary judgment, "there [must be] no genuine issue as to any material fact." Fed. R. Civ. P. 56(c).  The moving party has the burden of providing the proper support for the motion in the form of pleadings and documentary evidence.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-159 (1970).  Once the movant shows "…the absence of a genuine issue of material fact…", the burden is on the non-moving party to set forth specific facts raising a

genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *United States ex. rel. Romano v. New York Presbyterian*, 426 F. Supp. 2d 174, 177 (S.D.N.Y. 2006). In any event, all justifiable inferences are to be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (other citations omitted).

### *Roles of the Parties*

Before analyzing the issues raised in the Motion, the roles of the parties as transferor and transferee must be sorted out, and the subject matter of the transfer must be determined. First, in its initial moving papers, the Town incorrectly asserted that the Debtor is the creditor and not the transferor, and fails to identify the "transfer" as the materials and labor provided by the Debtor to the Town. The Town's arguments seem to be largely predicated on what appears to be a fundamental misunderstanding of sections 544 and 550 of the Bankruptcy Code, and the effect the relevant State statutes have on these Bankruptcy Code provisions.

Section 544 of the Bankruptcy Code confers upon the trustee the rights and powers of a creditor of the debtor, including the power to "avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable" by such creditor. 11 U.S.C. § 544(a)(1). Using these powers, the trustee may avoid any transfer of property of the debtor or any obligation incurred by the debtor that would be voidable under applicable law by a creditor holding an unsecured claim. 11 U.S.C. § 544(b)(1). Under Section 544, the trustee steps "into the shoes of a creditor under state law" to avoid any transfers that the creditor could have avoided. *Univ. Church v. Geltzer*, 463 F.3d 218, 222, n. 1 (2d Cir. 2006). The Second Circuit Court of Appeals has opined that while constructive fraudulent conveyance claims under Section 544 borrow applicable state law regarding avoiding the transfer, "[a] constructive fraudulent conveyance action brought by a trustee et al. under Section 544 is a claim arising under federal

law." *In re Tribune Co. Fraudulent Conveyance Litigation*, 818 F.3d 98, 111 (2d Cir. 2016) (*citing In re Intelligent Direct Mktg*., 518 B.R. 579, 587 (E.D.Cal.2014)*; In re Trinsum Grp., Inc.*, 460 B.R. 379, 387–88 (S.D.N.Y.2011)*; In re Sunbridge Capital Inc*., 454 B.R. 166, 169 n. 16 (Bankr. D. Kan. 2011*); and *In re Charys Holding Co., Inc.*, 443 B.R. 628, 635-36 (Bankr. D. Del. 2010)).

While a fraudulent conveyance claim belongs to the debtor's creditors prepetition, courts have held that the claim becomes an asset of the debtor's estate upon the filing of a bankruptcy petition. *In re Tribune Co. Fraudulent Conveyance Litigation*, 818 F.3d at 117.[2]  The targeted asset does not become property of the debtor's estate until the trustee obtains a favorable judgment.  *Picard v. Fairfield Greenwich Ltd*., 762 F.3d 199, 212 (2d Cir. 2014).  In the instant case, the Trustee stands in the shoes of a creditor of the Debtor, which vests the Trustee with standing to recover fraudulent conveyances.  Under Article 10 of the DCL, a "conveyance" is defined as "every payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or incumbrance."  DCL § 270. The property alleged to have been conveyed in this case are the materials and labor provided by the Debtor to the Town, for which the Debtor received no consideration.  While personal services provided by a judgment debtor are not included within the definition of conveyances under DCL § 270, the Trustee is not seeking a recovery based on any personal services provided by the Debtor.  The Debtor, as a corporation, could not provide "personal services." Rather, it is the value of the labor and materials provided by the Debtor that the Trustee seeks to recover.

---

[2] There is some dispute over whether the filing of a bankruptcy renders these claims property of the debtor's estate or whether the claims belong to the transferor's creditors, but this split in authority is irrelevant with respect to the issues raised in the Motion.    *In re Tribune Co. Fraudulent Conveyance Litigation*, 818 F.3d at 116.

Once a transfer is avoided under Section 544, the remedy is set forth in Section 550, which provides that "the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property" from the transferee.  11 U.S.C. § 550(a).  In this case, there is no doubt that if the Trustee is successful, it is the value of the property, and not the sidewalks and curbs, that would be recovered by the Trustee. It is critical to understand that in this adversary proceeding, the Trustee is not entitled to seek recovery of the amounts allegedly due and owing to the Debtor under the Contract.  In fact, the Contract terms are not relevant to the resolution of the issues remaining in this adversary proceeding.  The Court must determine whether the Town, as the recipient of labor and materials for which it gave no consideration, is liable to the Debtor's estate and its creditors under § 544 of the Bankruptcy Code.  The Town is correct to assert that the Contract between the Town and the Debtor expired, and the Trustee may not merely seek the amount due under the Contract as there was no enforceable contract as of June 17, 2011. However, the finding by Justice Molia that the Contract expired on June 17, 2011 does not preclude the Trustee from commencing a proceeding to recover the value of the labor and materials transferred by the Debtor as a fraudulent conveyance under the DCL.

### *Preemption*

A threshold issue for the Court to consider is whether the preemption doctrine applies to this proceeding.  One of the Town's major arguments in favor of dismissing the Remaining Claims is that directing the Town to pay for the materials and labor supplied by the Debtor would violate GML § 103(1) and Town Law § 64(6).  According to the Town, Congress did not intend that the Bankruptcy Code be used to force a municipality to violate State laws that protect important State interests.  The important State interests the Town alleges are at stake include the

desire to protect the public from governmental misconduct, and the need to protect the public interest in the prudent and economical use of public funds.  By seeking a ruling that the Trustee may not utilize § 544 of the Bankruptcy Code, the Town is challenging whether this bankruptcy provision lacks effectiveness in the face of State laws governing contractual relationships between a municipality and a third party.   The Court is not convinced that there is an actual conflict requiring application of the preemption doctrine because the Trustee does not seek to compel the Town to honor the Contract.  However, to the extent that the Debtor's and the Town's relationship commenced due to a contract between the parties, it is advisable to undergo an analysis of this issue.

Congress is vested with the exclusive power under the Bankruptcy Clause of the U.S. Constitution to enact uniform laws governing bankruptcy. U.S. CONST., ART. 1, CL. 8. The Supremacy Clause of the U.S. Constitution provides that federal laws, such as those concerning bankruptcy "shall be the supreme Law of the Land." U.S. CONST., ART. VI, CL. 2. The federal preemption doctrine provides that federal law will preempt state law when a discernible conflict or inconsistency arises. *See Arizona v. United States*, 567 U.S. 387, 399 (2012); *Gibbons v. Ogden*, 9 Wheat. 1, 210–211 (1824). When preemption applies, states are deprived of the power to act under the applicable state law and the governing federal law becomes paramount. *See Hillsborough County, Fla. v. Automated Med. Laboratories, Inc.*, 471 U.S. 707, 712 (1985).

Federal law preempts state law in three circumstances: (1) express preemption; (2) field preemption; and (3) conflict preemption**.** *New York SMSA Ltd. Partnership v. Town of Clarkstown***,** 612 F.3d 97, 104 (2d Cir. 2010).  The question of whether preemption applies is always dependent on Congressional intent. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45 (1987) ("The purpose of Congress is the ultimate touchstone."). Express preemption occurs when

Congress identifies state law it considers to be inconsistent with goals of the federal law at issue. *See id.* When Congress expressly states that its laws pre-empt state law, then preemption is clear and unequivocal. *English v. General Elec. Co*., 496 U.S. 72, 79 (1990). It has been recognized that where express preemption is lacking, a "preemptive effect may be inferred where it is not expressly provided." *In re Tribune Co. Fraudulent Conveyance Litigation*, 818 F.3d at 109. In the absence of express preemption by Congress, state law is impliedly preempted when there is field preemption or conflict preemption. *Altria Group, Inc. v. Good*, 555 U.S. 70, 76-77 (2008)**.** Field preemption occurs "when Congress intends that federal law occupy a given field." *In re Enron Corp.*, 327 B.R. 526, 530 (Bankr. S.D.N.Y 2005). "Field preemption reflects a Congressional decision to foreclose any state regulation in the area even if it is parallel to federal standards." *Arizona v. United States*, 587 U.S. 387, 400 (2012). Conflict preemption may occur in two circumstances: first, where it is impossible to comply with the state and federal law, or where state law "'stands as an obstacle to accomplishment and execution of the full purposes and objectives of Congress.'" *English v. General Elec. Co*., 496 U.S. at 79 (other citations omitted). What qualifies as a sufficient obstacle is to be determined by reviewing the federal statute as a whole, and examining its purpose and effects. *In re Westby*, 473 B.R. 392, 412 (Bankr. D. Kan. 2012).

Even if there is an apparent conflict, the Supreme Court has recognized that the Bankruptcy Code will not preempt a state statute that is "reasonably designed to protect the public health or safety from identified hazards." *Midlantic Nat. Bank v. New Jersey Dept of Environmental Protection*, 474 U.S. 494, 507 (1986). In addition, there is an assumption that the historic police powers of a state will not be superseded by a federal law absent a finding of clear Congressional intent to preempt state law. *Altria Group, Inc. v. Good*, 555 U.S. at 77.

In its supplemental papers, the Town claims that New York State's interest in ensuring that public contracts are only awarded after competitive bidding, in strict compliance with the applicable statutory requirements, prevails over any right the Trustee has to prosecute a fraudulent conveyance claim against the Town. The Town relies heavily on *In re Murphy*, 331 BR 107 (Bankr. S.D.N.Y. 2005), but the Town misconstrues the *Murphy* decision. In the *Murphy* case, the Chapter 7 trustee filed an adversary proceeding seeking to avoid a town's tax forfeiture of the debtor's real property as a fraudulent conveyance because, *inter alia*, the debtor did not receive reasonably equivalent value for the forfeiture.[3] In addition, the debtor was permitted to file an intervenor complaint which included the same causes of action brought by the Chapter 7 trustee. The town filed a motion to dismiss the Chapter 7 trustee's complaint and the debtor's intervenor complaint. The Bankruptcy Court denied the portion of the defendant town's motion to dismiss the Chapter 7 trustee's fraudulent conveyance action regarding the failure to provide reasonably equivalent value as follows:

> Certainly, New York State has a strong interest in assuring that its citizens meet their tax obligations and to enforce those obligations when they remain unmet. However, that interest cannot overcome Congress' policy choice that reasonably equivalent value must be obtained for a transfer of a debtor's property in the bankruptcy context, where the rights of other creditors are prejudiced. . . . The Bankruptcy Code affords taxing authorities no exception, and a taxing authority is bound by the Bankruptcy Code to the same extent as any other creditor.

*In re Murphy*, 331 B.R. at 120. The Bankruptcy Court in *Murphy* recognized that a forfeiture of property, even if valid under applicable non-bankruptcy law, could still be subject to avoidance under the Bankruptcy Code for providing less than reasonably equivalent value:

> Forfeiture of property to the taxing authority under the R.P.T.L. for persistent refusal to pay taxes is a matter of state law, which is

---

[3] The Chapter 7 Trustee's complaint in *Murphy* also contained other causes of action not relevant to the Motion.

> heavily invested with public interest for the State of New York and
> its local communities.  State law and public interest must be
> respected except to the extent that federal law [supersedes] the
> under the Supremacy Clause of the Constitution.  Art VI c. 2.  The
> Bankruptcy Code is not concerned with the obligation and rights of
> taxpayers and taxing authorities under state laws, except (in the
> context of this case) to the extent that the bankruptcy objectives
> expressed in Section 548 must preempt state law.  The bankruptcy
> objective of the avoidance powers . . . is to protect creditors
> generally from prejudice resulting from transfers of the debtor's
> property for less than fair consideration, resulting in diminution of
> the debtor's estate available to pay creditors.

*Id*. at 122.

The conflict between New York forfeiture law and federal bankruptcy avoidance law was resolved in favor of the bankruptcy law under the Supremacy Clause, but only to the extent that recovery of the transfer would benefit the creditors.  *Id*.  The Court concluded that there was no federal bankruptcy interest in upsetting state property interests to allow the debtor to personally benefit from an avoidance action.  *Id* at 125.  Therefore, the Bankruptcy Court granted the motion to dismiss the debtor's intervenor complaint to the extent that the debtor sought to recover a substantial surplus that would result from the avoidance.

The *Murphy* decision clearly supports the Trustee's argument that the rights of the creditors in this case to recover the value of a fraudulent transfer are superior to the admittedly strong interest New York state has in protecting the public interest in the prudent and economical use of taxpayer funds.  There does not appear to be any threat that the Debtor would receive any surplus in this case, so the factors considered in limiting any recovery in the *Murphy* case do not apply to this adversary proceeding.

In this case, there is some basis to the argument that the New York General Municipal Law §§ 103 and 104-b as well as Chapter 57 of the Procurement Policy of the Town of Smithtown appear to be in conflict with the enforcement of rights created by Congress in the

Bankruptcy Code.  According to the Town, it cannot comply with a judgment directing payment to the Trustee because the Contract expired and was no longer enforceable.  As a result, the Debtor's estate is not entitled to recover any amount on account of the unenforceable contract, or on a *quantum meruit* basis.  *S.T. Grand, Inc. v. City of New York,* 32 N.Y.2d 300, 305, 298 N.E.2d 105, 108 (1973) (other citations omitted).  In this instance, a conflict arises between the State and local statutes on the one hand, and the objectives of the Bankruptcy law to permit the trustee to recover the value of constructive fraudulent conveyances for the benefit of the creditors on the other hand.

The Town asserts that compelling State interests override the federal bankruptcy laws regarding recovery of the value of the labor and materials provided by the Debtor.  The state interests the Town identifies concern protection of the public, the prevention of corruption, and the safeguarding of taxpayer dollars from unscrupulous vendors and municipal employees.  While the Bankruptcy Code does not concern itself with the rights of taxing authorities under applicable state law, the interests protected by these state laws must be subservient to the statutes passed by Congress and incorporated into the Bankruptcy Code, which promote the objectives of protecting a debtor's creditors from harm as a result of transfers made by a debtor for less than fair consideration.

The Town's claim that the State interests it seeks to protect are so great that the avoidance statutes in the Bankruptcy Code must give way is unavailing.  While there is significant interest in protecting the public from extravagance and collusion, the public health or safety would not be threatened if the Trustee were to prevail on the Remaining Claims.  Unlike the case of *Midlantic Nat. Bank v. New Jersey Dept of Environmental Protection*, 474 U.S. 494,

the public's health and safety is not at risk if the Trustee is permitted to recover the value of the materials and labor provided to the Town under §§ 544 and 550 of the Bankruptcy Code.

### Effect of the Contract Decision on This Adversary Proceeding

In addition to claiming that the State's interest in protecting the taxpayers outweighs any interest in maintaining a fraudulent conveyance action for the benefit of the creditors of the Debtor, the Town asserts that the findings in the Contract Decision preclude this Court from ruling in favor of the Trustee with respect to the Remaining Claims.

i.    *Rooker-Feldman* Doctrine

According to the Town, Justice Molia's prior rulings in the Contract Decision bar recovery by the Trustee in this adversary proceeding. First, the Town alleges that the issues raised in the Remaining Claims have already been litigated and should be dismissed for lack of jurisdiction under the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine concerns the application of 28 U.S.C. § 1257, which provides that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court." This doctrine precludes federal district courts from acting as appellate courts in reviewing state court judgments. *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 415-16 (1923).

As the Supreme Court enunciated in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005), the *Rooker-Feldman* doctrine "is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." In *Exxon Mobil Corp.*, the Supreme Court recognized that the *Rooker Feldman* doctrine is a narrow jurisdictional bar to litigation where the losing party "repairs to federal court

to undo the [state court] judgment in its favor." *Id*. at 293.   However, the Supreme Court cautioned that "*Rooker-Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions." *Id*. at 284.   In fact, "[i]f a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Id*. (quoting *GASH Assocs. v. Village of Rosemont,* 995 F.2d 726, 728 (7th Cir. 1993)).

Courts examining the reach of the *Rooker-Feldman* doctrine have concluded that it has little to no application in the context of avoidance actions under the Bankruptcy Code.   The reason is aptly explained by the Ninth Circuit in *In re Gruntz*, 202 F.3d 1074, 1078-79 (9th Cir. 2000):

> [The *Rooker-Feldman*] doctrine arises out of a pair of negative inferences drawn from two statutes:  28 U.S.C. § 1331, which establishes the district court's 'original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States'; and 28 U.S.C.  § 1257, which allows Supreme Court review of '[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had.' *Rooker* itself relied upon the 'legislation of Congress,' namely the predecessors of these statutes in the Judicial Code. . . . Of course, the statutes that form the basis of the *Rooker-Feldman* doctrine co-exist among other federal jurisdictional laws.  To derive a coherent theory of federal jurisdiction, one must consider the entire federal jurisdictional constellation.  . . . It is well-settled that the *Rooker-Feldman* doctrine does not touch the writ of habeas corpus. . . . [H]abeas corpus is not an 'exception' to *Rooker-Feldman*, but a procedure with roots in statutory jurisdiction parallel to- and in no way precluded by, the doctrine. So, too, it is with bankruptcy law. In apparent contradiction to the *Rooker-Feldman* theory, bankruptcy courts are empowered to avoid state judgments, see, e.g., 11 U.S.C.  §§ 544, 547, 548, 549; to modify them . . ., and to discharge them. . . .

Courts have routinely held that the *Rooker- Feldman* doctrine is simply not relevant where federal statutes, such as Sections 544 and 548 of the Bankruptcy Code, confer upon bankruptcy courts the power to modify or avoid state court judgments.  *In re Hopkins,* 346 B.R. 294, 302 (Bankr. E.D.N.Y. 2006); *In re Maui Indus. Loan & Finance Co.*, 454 B.R. 133, 136 (Bankr. D. Haw. 2011) ("The *Rooker-Feldman* doctrine does not apply to avoidance actions under sections 544 and 548."); *In re Martyak*, 432 B.R. 25, 31 (Bankr. N.D.N.Y. 2010) ("Since *Rooker - Feldman* does not apply when a federal statute specifically authorizes a lower court to vitiate a state court judgment, the doctrine is inapplicable to [the debtor's] avoidance action asserted under Code section 548.").  Under such circumstances, the *Rooker-Feldman* doctrine does not bar the action because the Bankruptcy Court has been granted specific authority to exercise its jurisdiction over the judgment in question.

Even if the Court were to apply the *Rooker-Feldman* analysis to determine whether the Remaining Actions were barred, the Town cannot satisfy the requirements.  In our case, the Trustee does not seek to disturb the findings in the Contract Decision.  The Trustee asserts independent federal claims, and is not inviting review and rejection of the Contract Decision.  The Third Circuit's decision *In re Philadelphia Entertainment & Development Partners*, 879 F.3d 492 (3d Cir. 2018) is most instructive.  In *In re Philadelphia Entertainment & Development Partners*, the Third Circuit Court of Appeals was called on to determine whether the District Court, which affirmed the Bankruptcy Court, erred when it held that the *Rooker-Feldman* doctrine barred the Chapter 11 trustee from commencing a fraudulent transfer action against the Pennsylvania Gaming Board for revoking the Chapter 11 debtor's slot machine license, for which the debtor paid $50 million.  In analyzing whether to grant the motion to dismiss the complaint, the Bankruptcy Court held that the estate's right to be compensated for the value of

the license was the "functional equivalent" of the right to retain the license, which required a

conclusion that the *Rooker-Feldman* doctrine barred any claim for the value of the license.   879

F.3d at 497 (citing lower court decision).

The Third Circuit reversed, holding that trustee was not inviting review and rejection of

the underlying state court decision to revoke the gaming license:

> The Bankruptcy Court could have answered these
> questions without rejecting or even reviewing the
> Commonwealth Court's decision.  And, if it accepted
> the Trustee's argument, the Bankruptcy Court would have
> concluded that the Bankruptcy Code permitted avoidance
> of the transfer, not that the Commonwealth Court had
> committed legal error.

*Id*. at 501 (footnote omitted).   Based on its analysis, the Third Circuit concluded that the

Pennsylvania Gaming Board had not met the standard for invoking the *Rooker Feldman* doctrine.

The Court finds this analysis equally applicable to this case. The Trustee does not seek to

overturn the Contract Decision, but seeks recovery for the materials and labor provided by the

Debtor without the benefit of a contract.   For these reasons, the portion of the Motion seeking

dismissal of the Remaining Claims based on the *Rooker – Feldman* doctrine is denied.

ii.    *Res Judicata* and Collateral Estoppel

Under New York law, collateral estoppel prevents parties from relitigating an issue when

"(1) the identical issue necessarily was decided in the prior action, and (2) the party to be

precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the

prior action. *Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 65 (2d Cir. 2007) (citations omitted),

*cert denied*, 555 U.S. 1097 (2009); *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006).

The first prong is not satisfied in this case. The issues raised in the State Court Action, and distilled and decided in the Contract Decision concerned whether the Contract was enforceable based on applicable State and municipal law. The State Court Action did not involve whether the transfer of materials and labor by the Debtor to the Town constituted a fraudulent conveyance. The Town mistakenly argues that the property the Trustee is seeking to recover is the payment from the Town under the Contract. However, the Trustee is not claiming that the monies owed under the Contract are property of the Debtor's estate. Therefore, the Town's argument is easily rejected. Clearly, the estate has no interest in monies due under a contract that is invalid as a matter of law. The property conveyed is labor and materials provided to remove and build the curbs sidewalks, not the moneys allegedly owed under the Contract. Section 550 of the Bankruptcy Code states that if a transfer is avoided under § 544, "the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property." In this case, the Trustee is only entitled to recover the value of such property transferred as an appropriate remedy in this case.

The Town also incorrectly argues that the Remaining Claims could have been asserted in the State Court Action. However, these are claims under § 544, and could not have been brought in State Court by the Debtor. These claims belong to the Trustee, who derives his standing from the unsecured creditors of the Debtor.

*Res judicata* does not bar this proceeding either. The doctrine of *res judicata* is grounded in the Full Faith and Credit Clause of the United States Constitution. U.S. Const. art. IV, §1. It prevents a party from re-litigating any issue or defense that was finally decided by a court of competent jurisdiction and which could have been raised or decided in the prior action. *See Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994) (applying New York preclusion rules);

*Swiatkowski v. Citibank*, 745 F. Supp.2d 150, 171 (E.D.N.Y. 2010 (citing *Waldman v. Vill. of Kiryas Joel*, 39 F. Supp.2d 370, 377 (S.D.N.Y. 1999).  According to the Second Circuit, the test for determining whether *res judicata* applies is whether 1) the prior decision was a final decision on the merits, 2) the litigants were the same parties, 3) the prior court was a court of competent jurisdiction, and 4) the causes of action were the same.  *Corbett v. MacDonald Moving Services, Inc.*, 124 F.3d 82, 87-88 (2d Cir. 1997) (*citing In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir. 1985)).

Under the doctrine of *res judicata*, this Court is bound to accept the State Court's determinations, which would include that the Contract expired as a matter of law. The Town also asserts that the remaining elements of *res judicata* are met, and that as a result, the Remaining Claims are barred. However, *res judicata* does not apply to a chapter 7 trustee:

> [T]he trustee in bankruptcy . . . represents all creditors." . . . As such, the trustee is not simply the successor in interest to the debtor; he represents the interest of all creditors of the debtor's bankruptcy estate.  . . .
>
> Because the trustee is invested with 'extraordinary rights . . . as a general representative of . . . creditors,' he is 'not bound, either on *res judicata* or judicial collateral estoppel [grounds] by the prior state proceedings.

*In re DLC, Ltd.*, 295 B.R. 593, 602 (8th Cir. B.A.P. 2003) (*citing In re Marlar*, 252 B.R.  743, 757 (8th Cir. B.A.P. 2000) (other citations omitted)).

Even if the Trustee were deemed to be in privity with the Debtor with respect to the State Court Action, the State Court Action, which was a contract dispute, did not concern the same claims as the fraudulent transfer claims asserted in this adversary proceeding.  *In re DLC, Ltd.*, 295 B.R. at 604. Whether the Contract is enforceable is not relevant to the Remaining Claims. The Trustee is not entitled to recover the monies allegedly due under the Contract.  This is an

entirely separate claim to recover the value of the labor and materials transferred to the Town for

no consideration.  Therefore, the Town cannot satisfy the fourth element of *res judicata*.

   iii.   Abstention

       The Town asserts that because this Court previously granted its request to abstain from

deciding the Removed Action, the Court should abstain from hearing the Remaining Claims as

well.  This Court did find that the Removed Action was not, as alleged by the Debtor, akin to a

turnover action under Bankruptcy Code § 542 because there was no unconditional property of

the estate subject to a turnover proceeding.  Without a determination that the Contract remained

in full force and effect, the Debtor was not entitled to demand payment under the Contract.

Because the enforceability of the Contract was not a core proceeding, and the Bankruptcy Court

was not in a position to resolve the adversary proceeding faster than the State Court, the Court

granted the Town's motion to abstain.  However, the Remaining Claims do not concern the

enforceability of the Contract.  The same reasoning that compelled this Court to abstain from

hearing the Removed Action now compels this Court to conclude that abstention is not

warranted.  The Remaining Claims are all core proceedings under the Bankruptcy Code, and

therefore, the requirements for mandatory abstention pursuant to 28 U.S.C.  § 1334(c)(2)[4] cannot

be met.

       ***Remaining Arguments Raised by the Town***

---

[4] 28 U.S.C. § 1334(c) (2) states:

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Having analyzed the Town's arguments regarding subject matter jurisdiction, the Court now turns to the Town's challenges to the specific elements of the Remaining Claims.   First, the Town asserts that under the DCL, personal services do not constitute conveyances that may be recovered by the Trustee.  Second, the Town alleges that the Trustee cannot establish the requisite intent on the part of the Debtor for the purposes of the fourth cause of action under § 275 of the DCL. The Town also claims that the Trustee has failed to establish the element of insolvency, which is relevant under the second cause of action pursuant to § 273 of the DCL.

Article 10 of the New York Debtor & Creditor Law defines a "conveyance" as "every payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or incumbrance." DCL § 270.  The Town is correct that personal services provided by a debtor are not considered conveyances under this definition.  *State Farm Ins Co. v. Shanley & Schwartz, Inc.*, 111 A.D.3d 918, 919-20, 975 N.Y.S.2d 757 (3d Dep't 2013).   According to the Town, the labor provided by employees of the Debtor or contractors hired by the Debtor constitute "personal services" and therefore do not fit within the definition of "conveyance."  However, the labor provided by the Debtor is not in the nature of personal services by a debtor, which distinguishes this from the facts in *State Farm Ins Co. v. Shanley & Schwartz, Inc.* In that case, the judgment debtor was an individual who provided his services to a defendant corporation solely owned by his wife.  In our case, the Debtor either paid employees or paid contractors to provide the work for the Town's benefit. The Trustee does not seek recovery of the value of "personal services."  The Trustee seeks to recover the value of the labor of third parties hired by the Debtor, and materials the Debtor provided to the Town. In addition, the materials provided (cement, bricks and other materials) are certainly included within the definition of "conveyance" under DCL § 270.

As to whether summary judgment can be granted in the Town's favor as to the fourth

cause of action under DCL § 275, the Court finds that the Town has not established that there is

no genuine issue of material fact in dispute.  Section 275 of the DCL states as follows:

> Every conveyance made and every obligation incurred without fair
> consideration when the person making the conveyance or entering
> into the obligation intends or believes that he will incur debts
> beyond his ability to pay as they mature, is fraudulent as to both
> present and future creditors.

The Town states that the Trustee cannot establish as a matter of law that at the time the Debtor

provided the labor and materials pursuant to the Town's directive, the Debtor intended to incur

debts beyond its ability to repay.  While the Debtor may not have had such intent, the Town has

failed to address whether the Debtor believed that by performing the work in question, it would

incur debts beyond its ability to pay them as they mature.  Therefore, the Debtor will have its

chance to establish the elements of this cause of action at trial.

The Town also states that the Trustee cannot establish that the Debtor was insolvent or

rendered insolvent as a result of the transfers.  Proof of insolvency is an element of DCL § 273,

but there is a presumption of insolvency where a debtor makes a conveyance without fair

consideration.  *In re USA United Fleet, Inc*., 559 B.R. 41, 60 (Bankr. E.D.N.Y. 2016) (citing

*Geron v. Schulman (In re Manshul Constr. Corp.*,) 2000 WL 1228866 at *53 (S.D.N.Y. Aug. 30,

2000); and *Feist v. Druckerman*, 70 F.2d 333, 334 (2d Cir. 1934)).   Given that the Town must

overcome the presumption of the Debtor's insolvency, the Town cannot merely claim at the

summary judgment stage that the Trustee is unable to establish that the Debtor was insolvent or

rendered insolvent as a result of the services provided to the Town.  At trial, it will be the

Town's burden to overcome the presumption of the Debtor's insolvency.  Therefore, summary judgment is denied as to the second cause of action.

***Conclusion***

For the reasons set forth above, the Motion is denied in its entirety.  The Court shall enter an order consistent with this Memorandum Decision, along with a Pretrial Order scheduling a trial on the Remaining Claims.



**Dated: Central Islip, New York**
**July 10, 2019**

**Robert E. Grossman**
**United States Bankruptcy Judge**